## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KEVIN P. LANCASTER**         ***   JUDGE**

**VERSUS**

                                   ***   DOCKET NO.**

**RONALD D. KRUMVIEDE, TRANS GLOBE LOGISTICS AMERICA INC. and SENTRY SELECT INSURANCE COMPANY**       ***   MAGISTRATE**

---

### DEFENDANTS' JOINT NOTICE OF AND CONSENT FOR REMOVAL OF ACTION

---

**TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA,**

Ronald D. Krumviede, Trans Globe Logistics America Inc. and Sentry Select Insurance Company., defendants in the above captioned case, appearing herein through undersigned counsel, with full reservation of all defenses, objections, and rights, respectfully represent the following:

1.

On January 5, 2022, a Petition for Damages was filed by Kevin P. Lancaster in the 21st. Judicial District Court for Tangipahoa Parish bearing Docket No. 2021-3521, DIV. B. A copy of the Petition for Damages filed with the 21st Judicial District Court has been attached to the Notice of Filing and Certificate of Removing Defendants as "Exhibit A".

### FEDERAL JURISDICTION

#### Removal Pursuant to 28 U.S.C. §1332

2.

This civil action is a matter over which this Court has original jurisdiction by virtue of Diversity of Citizenship (28 USC §1332) and is one which may be removed to this Court

under the provisions of 28 USC §1441 et seq., in that it is a civil action wherein diversity of citizenship exists between the plaintiffs and all defendants, with the requisite amount in controversy being present for the claims of Mr. Lancaster.

### Complete Diversity Exists as to All Parties

3.

According to the Petition, Plaintiff Kevin Lancaster is domiciled in St. James Parish and is a citizen of the State of Louisiana.

4.

Defendant Trans Globe Logistics America Inc. is a corporation organized under the laws of the State of New York and maintains its principal place of business in Buffalo, New York. The state court suit was sent to Trans Globe Logistics America Inc via the Louisiana Long-arm statute, La. R. S. 13:3201 et. seq., on January 20, 2022 and was accepted on January 26, 2022.

5.

Defendant Ronald D. Krumviede is a citizen of the State of Iowa.  He has resided in Iowa for many years and intends to remain as a citizen of Iowa. The state court suit was sent to Mr. Krumviede via the Louisiana Long-arm statute, La. R. S. 13:3201 et. seq., on January 20, 2022.

6.

Defendant Sentry Select Insurance Company is a corporate entity of the State of Wisconsin, where it is both incorporated and maintains its principal place of business. Service of the state court Petition through its agent of service, CT Corporation on January 18, 2022.

**The Requisite Amount in Controversy Is Established**

7.

Upon information and belief, and without making any stipulation as to the amount of any provable damages, these defendants aver that the "amount in controversy" in this dispute is in excess of $75,000.00.

8.

First, it should be noted that Mr. Lancaster's' lawsuit contained only general allegations of injury and related pain, suffering, etc…but without allegation or specification as to the particular medical treatment he has thus far undergone.  The Petition for Damages itself did not, therefore set forth sufficient information upon with removal could be premised.  Please see the state court Petition for Damages submitted herewith.

9.

The defendants then submitted an Answer in state court and also propounded Interrogatories and Requests for Production on February 18, 2022.  Plaintiff's counsel then directed to defense counsel an email on February 19, 2022, in which Plaintiffs' counsel provided post-accident medical records and bills.  Please see said email attached as Exhibit B.

All the medicals supplied on February 19, 2022, are attached hereto as Exhibit C. No substantive medical information of any kind had been submitted to the defendants (or to their insurer) prior to February 19, 2022.

10.

Upon receipt of the plaintiff's medical records, the defense was for the first time made aware of particular medical information regarding Mr. Lancaster which does reveal

an "amount in controversy" in excess of $75,000.00. As set forth in greater detail below the defense herein is accordingly "setting forth facts in controversy, with summary-judgment type evidence that support a finding of the requisite amount." <u>Drill Cuttings Disposal Co. L.L.C. v. Chesapeake Operating, Inc.</u>, 2012 WL 399247, at *1 (W.D. La. Feb. 7, 2012) *citing* <u>Luckett v. Delta Airlines, Inc.</u>, 171 F.3d 295, 298 (5th Cir.1999). While the Defendants herein do not concede any facts pertaining to the nature, extent and causation of injuries, the medical records supplied on February 19, 2022, revealed the following information upon which the claims of the plaintiff are based:

In short, and as will be elaborated upon below, MRIs done of Mr. Lancaster's cervical and lumbar spines show a variety of disc herniations, disc bulges and facet joint abnormalities.  Basic chiropractic care has not resolved Mr. Lancaster's symptoms and he has progressed to aggressive interventional pain management modalities.  He has thus far undergone at least 2 lumbar epidural steroid injections (LESI) as well as at least one cervical epidural steroid injection.  His treatment then progressed to lumbar medial branch blocks and he has most recently begun lumbar radiofrequency ablation (RFA) treatments.  His treating physician is recommending future RFA treatments on an indefinite basis.

To more fully elaborate:  Mr. Lancaster's medical records indicate that, following the accident of 1/7/21, Mr. Lancaster first treated at River Parish Chiropractic on January 12, 2021, with complaints of sleep disturbances, anxiety, headaches, cervical pain, upper thoracic pain, right shoulder pain, left shoulder pain, cervical stiffness, muscle spasm, mid-thoracic pain, lumbar stiffness, lumbosacral pain, low back pain, right sacroiliac joint pain and left sacroiliac joint pain. Those complaints have continued through the present

date.  The initial diagnosis was of post-traumatic headache; cervical facet syndrome; cervico-thoracic dorospathy; cervical strain; cervical sprain; myalgia; muscle spasm; right shoulder sprain; right shoulder strain; left shoulder sprain; left shoulder strain; thoracic dorsopathy; thoracic spine sprain; lumbar spine sprain; lumbar spine strain; lumbar spine dorsopathy; lumbosacral dorsopathy; lumbosacral sprain. Therapy was ordered for 6 weeks on a twice per week basis.

On February 17, 2021, a lumbar MRI was ordered. Clinical impressions of the MRI were:

- **L3-L4 disc bulge** identified producing **mild right foraminal narrowing**.

- **L4-L5 disc bulge and asymmetric right lateral annular fissure** identified. Associated facet hypertrophy is present, there is **mild spinal canal and moderate bilateral foraminal narrowing**. **Bilateral facet effusions** are present.

- **L5-S1 central/right paracentral 2.1 mm disc herniation and annular fissure identified**. There is **contact of the thecal sac and right S1 nerve root**, contralateral left mild foraminal narrowing is evident secondary to ligamentum flavum thickening and facet hypertrophy.

A cervical MRI was also conducted on February 17, 2021.  The results of the neck MRI showed:

- Straightening of the cervical lordosis identified, concerning for muscle spasm. Chronic bony changes are present at C5-C6 and C6-C7. There is no acute compression fracture.

- **C3-C4 disc bulge** identified with **facet and uncinate joint hypertrophy** producing moderate left greater than **right foraminal narrowing**.

- **C4-C5** asymmetric left subarticular **2.3 mm disc herniation** identified. **Associated facet hypertrophy** and moderate left greater than right **foraminal narrowing** identified.

- **C5-C6 uncinate and facet joint hypertrophy** identified producing mild-moderate bilateral foraminal narrowing.

- **C6-C7 low grade disc bulge identified with associated facet hypertrophy** producing **mild bilateral foraminal narrowing**.

After 15 treatments at River Parish Chiropractic, Mr. Lancaster's complaints did not resolve and he was then was referred to pain management specialists on March 3, 2021.

**Epidural Steroid Injections (ESIs)** in BOTH the cervical and lumbar spines were performed on April 20,2021, by Dr. Jolly at the Louisiana Pain Specialists.  A second lumbar ESI was performed on August 5, 2021.

On October 6, 2021, Dr. Jolly recommended "scheduling **bilateral L2, L3, L4 MBB/RFA** given positive exam findings for spondylosis and inflammation". The term MMB refers to "medial branch blocks"; the term RFA refers to "radiofrequency ablation", a procedure under which nerves are burned to disable them and disrupt the transmission of pain. **The medial branch block was performed on October 21, 2021**; **Mr. Lancaster underwent radiofrequency ablation on November 11, 2021**.   Dr. Jolly has recommended that Mr. Lancaster **"consider repeat RFA every 6-12 months pending persistence relief**.  Reassess relief of bilateral L2, L3, L4 FRA at next OV. F/U 1 month".

The last record we have from Dr. Jolly, dated January 12, 2022, contains the treatment plan to **"Consider lumbar left L4, L5 TF; consider repeat FRA every 6-12 months pending persistence relief. F/U 4-6 weeks.**"

Mr. Lancaster has had 40 treatments at River Parish Chiropractic through February 21, 2022.  Records provided for his past medicals reveal a total of past medicals of $14,705.00

The medical records provided to the Defendants on February 19, 2022 therefore show that medical treatment has consistently occurred since the accident and that

continued treatment is necessary. We respectfully submit that the requisite amount in controversy is present in this case.

Courts have found the amount in controversy met for purposes of federal subject matter jurisdiction under similar circumstances, even without a surgical recommendation. "Defendants correctly point out that it is well established in Louisiana law that damage awards for a herniated disc without surgical intervention may exceed $75,000.00" Thibodeaux v. GEICO Advantage Ins. Co., CV 16-158-JWD-EWD, 2016 WL 4055660, at *5 (M.D. La. July 8, 2016), report and recommendation adopted, CV 16-158-JWD-EWD, 2016 WL 4033981 (M.D. La. July 26, 2016).

In Pruitt v. Parsons, 2001 WL 1545703, at *1 (E.D. La. Dec. 3, 2001), the Court found the amount in controversy met where the plaintiff alleged contusions and abrasions, and injury to his neck and lower back, and noted that "Defendants refer the Court to a litany of Louisiana cases involving awards for similar injuries in excess of $75,000.00, including cases in which plaintiffs for whom no surgery was recommended were awarded $100,000.00 and $400,000.00." See also Williams v. Perez, 2007 WL 9711090, at *4 (M.D. La. Oct. 23, 2007), report and recommendation adopted, 2007 WL 9711088 (M.D. La. Nov. 8, 2007) (citing cases).

Courts have awarded general damages to plaintiffs who had cervical and lumbar injuries, without surgeries, several times the amount of incurred medical expenses. See Collier v. Benedetto, 897 So.2d 775, 780 (La. App. 5th Cir. 2005) (adjusting award of general damages from $50,000.00 to $75,000.00 where plaintiff in automobile accident, who declined surgery, "sustained injuries to his back, neck, knee, thigh and shoulder, a small right disc protrusion at C5–C6, and cervical and lumbar muscle strains" and was

awarded just $5,718.75 in medical expenses); <u>Perez v. State ex rel. Crescent City Connection, Div. of Dep't of Transp. & Dev</u>., 753 So.2d 913, 914–15 (La. App. 4th Cir. 2000) (affirming award of $150,000.00 in general damages where plaintiff was not recommended for, and did not have, surgery for bulging cervical, thoracic, and lumbar strains and bulging discs, as well as post-traumatic headaches, and incurred past medical expenses of just over $27,000.00); <u>Wehbe v. Waguespack</u>, 720 So.2d 1267, 1270–72 (La. App. 5th Cir.1998) (affirming award of "$185,000.00 for general damages for a herniated C3–4 disc without surgery and aggravation of pre-existing degenerative lumbar spine disease without any disc herniation" where plaintiff incurred past medical expenses of $6,590.00).

Therefore, upon information and belief, and without making any stipulation as to the nature, extent or causation of any provable damages, these defendants aver that the "amount in controversy" in this dispute is in excess of $75,000.00 for Mr. Lancaster based upon the medical evidence first supplied to the Defendants on February 19, 2021.

## Venue

11.

Plaintiffs filed this lawsuit in the 21st Judicial District Court for the Tangipahoa Parish. Thus, venue in this District is proper under 28 U.S.C. §1441(a), as it is the "District Court of the United States for the district and division embracing the place" where the original lawsuit is pending.

**Removal of This Matter is Timely**

12.

It was not facially apparent from the Lancaster Petition that the amount in controversy exceeded the $75,000.00 threshold for this Court's diversity jurisdiction. It was only upon receiving Mr. Lancaster's medical records on February 19, 2022, including the medical records described in detail above, that defendants were able to ascertain that the amount in controversy in this matter exceeds the $75,000.00 threshold for diversity jurisdiction. As such, the "30-day clock" within which to accomplish removal did not begin running until February 19, 2022. Given that this removal is being accomplished within 30 days of that date, removal is timely.

The United States Fifth Circuit employs what it terms a **"bright line rule"** that a plaintiff who wishes the removal deadline to commence upon service of the lawsuit suffice must make it expressly clear, in the lawsuit itself, that the damages are above the diversity threshold of $75,0000.00.

To quote the U.S. Fifth Circuit:

In our seminal case on timeliness disputes, Chapman v. Powermatic, Inc., 969 F.2d 160 (5th Cir.1992), this Court held that the thirty-day removal period under the first paragraph is triggered only where the initial pleading "affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." Id. at 163 (emphasis added). The Chapman court specifically declined to adopt a rule which would expect defendants to "ascertain[ ] from the circumstance[s] and the initial pleading that the [plaintiff] was seeking damages in excess of the minimum jurisdictional amount." Id. The Chapman court had several practical ramifications in mind when it announced this standard. By rejecting a so-called due-diligence standard, it sought to promote efficiency by preventing courts from expending copious time determining what a defendant should have known or have been able to ascertain at the time of the initial pleading. Id. Moreover, the Chapman court wanted to avoid encouraging defendants to remove cases prematurely for fear of accidentally letting the thirty-day window to federal court close when it is

unclear that the initial pleading satisfies the amount in controversy.   Id. **Ultimately, <u>Chapman</u> lays out a "bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount."** Id.  (emphasis added).  Such a statement would provide notice to defendants that the removal clock had been triggered but would not run afoul of state laws that prohibit pleading unliquidated damage amounts.

Mumfrey v. CVS Pharm., Inc., 719 F.3d 392,399 (5th Cir. 2013).

This requirement as to specificity in the state court pleadings is fully consistent with Article 893A(1) of the Louisiana Code of Civil Procedure which "requires" a plaintiff to state that his damages are below the diversity of citizenship threshold on damages if it is his intention to prevent the establishment of federal jurisdiction:

> No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand. The prayer for relief shall be for such damages as are reasonable in the premises except that if a specific amount of damages is necessary to establish the jurisdiction of the court, the right to a jury trial, **the lack of jurisdiction of federal courts due to insufficiency of damages**, or for other purposes**, a general allegation that the claim exceeds or is less than the requisite amount is required**.

La. C.C.P. art 893A(1) (Emphasis supplied).

The Fifth Circuit's "bright-line rule" as announced in <u>Mumfrey</u> and <u>Chapman</u> has been consistently applied in the district courts of the Fifth Circuit, including the Eastern District, as is revealed by the following survey of recent Eastern District decisions on this issue:

> In our seminal case on timeliness disputes, *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992), the Fifth Circuit specifically declined to adopt a "due diligence" standard which would require defendants to "ascertain[ ] from the circumstance[s] and the initial pleading that the [plaintiff] was seeking damages in excess of the minimum jurisdictional amount." More importantly, the Court laid out a "**bright line rule** requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the

initial pleading, to place in the initial pleading **a specific allegation that damages are in excess of the federal jurisdictional amount**." *Id.* (emphasis added). Such a statement would put defendants on notice that the removal period had been triggered, while not running afoul of state laws that prohibit pleading unliquidated damage amounts. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392 (5th Cir. 2013).

The bright line rule coined in *Chapman* has also been consistently applied in cases throughout this jurisdiction. [Citing Manieri v. CR Eng., Inc., CV 19-2805, 2019 WL 2022535, at *1 (E.D. La. May 8, 2019)].

Morgan v. West, CV 21-2008, 2021 WL 6049555, at *2 (E.D. La. Dec. 21, 2021)

"When state laws prohibit plaintiffs from pleading unliquidated damage amounts, as is the case in Louisiana, the Fifth Circuit has held that a plaintiff should place 'in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount' if she wishes the thirty-day time period to run from the defendant's receipt of the initial pleading." Trahan v. Hayes, 2019 WL 6487410, at *2 (E.D. La. Dec. 3, 2019) (quoting Chapman, 969 F.2d at 163, cited by Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 399 (5th Cir. 2013)).

But if the case is not removable based on the initial pleading, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." U.S.C. 28 § 1446(b)(3). "The information supporting removal in a copy of an amended pleading, motion, order or other paper under § 1446(b)(3) must be unequivocally clear and certain to start the time limit running." Morgan v. Huntington Ingalls, Inc., 879 F.3d 602, 608-09 (5th Cir. 2018) (quotation, footnote, and alteration omitted; emphasis added); see Bosky, 288 F.3d at 211.22 "Other paper" may include a discovery response when the response notifies the defendant of the action's removability. Cole ex rel. Ellis v. Knowledge Learning Corp., 416 F. App'x 437, 440 (5th Cir. 2011).

Here, in their initial state-court petition, Plaintiffs allege several injuries and list the damages they seek, but they do not specifically allege that the damages are in excess of the federal jurisdictional threshold. These allegations are insufficient to have triggered the 30-day removal period. In Mumfrey v. CVS Pharmacy, Inc., the Fifth Circuit rejected a plaintiff's argument that his initial pleadings made the case removable "because his list of damages was so extensive it was clear his claims satisfied the

jurisdictional amount." 719 F.3d at 399. In addition to claims for mental anguish and attorney's fees, the plaintiff had pleaded a claim for lost wages, and because the defendant was his employer, he argued that the defendant knew his salary and thus also knew his claims' worth. See id. In rejecting this argument, the Fifth Circuit reiterated the "**bright line rule**" that if a plaintiff wishes the 30-day period to begin with the defendant's receipt of the initial pleading, he must "place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount." Id.

Shaw v. WAl-MART Louisiana, LLC, CV 21-2226, 2022 WL 123248, at *2–3 (E.D. La. Jan. 13, 2022)

There is a **bright line rule** that a defendant has thirty days to remove starting upon defendant's receipt of an initial pleading or other document that affirmatively reveals on its face why the case is removable. Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir. 1992). The trigger for removal must be unequivocally clear and certain. Bosky v. Kroger, 288 F.3d 208, 211 (5th Cir. 2002). Further, the trigger must be the result of a voluntary act by the plaintiff; the defendant's knowledge and actions cannot trigger the thirty-day clock. S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996); Cole v. Knowledge Learning Corp., 416 F.App'x 437, 440 (5th Cir. 2011). Specifically, the thirty days do not start to run if the defendant need to do independent research to ascertain the necessary facts, nor does a defendant's subjective knowledge trigger the thirty-day clock. S.W.S. Erectors, Inc., 72 F.3d at 494; Cole, 416 F.App'x at 440. At the same time, even if the thirty-day clock has not started to run, removal is proper if a defendant is able to show why the case is removable. De Aguilar v. Boeing Co., 47 F.3d 1404 (5th Cir. Mar. 7, 1995); see Manieri v. Cr. Eng., Inc., 2019 WL 2022535, at *——, 2019 U.S. Dist. LEXIS 77655, at *2-3 (E.D. La. May 8, 2019) (citing Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)).

The *Chapman* court wanted to avoid wasting court resources on determining Defendants' subjective knowledge at a given time and to discourage Plaintiffs from hiding the ball in their pleadings. **If Plaintiffs want the thirty-day clock to begin running, they must make unequivocally clear the facts triggering removability.**

Ragusa v. Louisiana Ins. Guar. Assn., 2:21-CV-1971, 2021 WL 5492793, at *4 (E.D. La. Nov. 23, 2021) *citing* Mumfrey v. CVS Pharm., Inc., 719 F.3d 392, 399.

With regard to triggering the 30-day time removal from the defendant's receipt of the initial pleading, as provided in § 1446(b)(1), the Fifth Circuit has provided a **bright line rule** that "the thirty-day removal period under the first paragraph is triggered only where the initial pleading 'affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.' " *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 399 (5th Cir. 2013) (quotin g *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)).

Hutchinson v. Govt. Employees Ins. Co., CV 20-2775, 2021 WL 363616, at *2 (E.D. La. Feb. 3, 2021).

Other district courts within the Fifth Circuit have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of the damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test." See Davis v. JK & T Wings, Inc., No. 11-501, 2012 WL 278728, at *3 (M.D. La. Jan. 6, 2012) (citing Alderdice v. Lowe's Home Centers, Inc., 2010 WL 371027 (M.D. La. Jan. 29, 2010); Nelson v. Wal-Mart Stores, Inc., 2009 WL 1098905 (W.D. La. Apr. 22, 2009), and numerous cases cited therein, Fontenot v. Granite State Ins. Co., 2008 WL 4822283 (W.D. La. Nov. 3, 2008); and Bonck v. Marriot Hotels, Inc., 2002 WL 31890932 (E.D. La. Dec. 30, 2002)), report and recommendation adopted, 2012 WL 278685 (M.D. La. Jan. 31, 2012). "When, as in the instant case, the petition is vague regarding the types of injuries incurred and any future problems resulting from the incident, 'the court must conclude that it was not 'facially apparent' that the amount of damages would exceed $75,000.'" Dunomes v. Trinity Marine Products, Inc., No. 14-1968, 2014 WL 7240158, at *4 (E.D. La. Dec. 19, 2014) (quoting Broadway v. Wal-Mart Stores, No. 00-1893, 2000

WL 1560167, at *2 (E.D. La. Oct. 18, 2000).  <u>Dykes v. Lyft, Inc</u>, CV 21-241-SDD-RLB.
(M.D. La. 2021).

In <u>Dykes</u>, the Middle District went on to hold:

"The Petition does not provide sufficient facts for determining the severity of
Plaintiff's injuries. Plaintiff does not allege the specific nature of his physical injuries or the
treatment sought or received. Plaintiff's vague allegation that he sustained injuries to his
"neck, back, and both shoulders" indicates little more than potential soft tissue damage.
There is no allegation that Plaintiff has suffered fractures or other wounds that would
require immediate medical attention. Plaintiff does not allege that he suffered nerve
damage, herniated discs, or that his injuries resulted in any surgery. Plaintiff does not
identify any incurred medical and drug expenses or the scope of the medical treatment
he has received or continues to receive as a result of the incident. In the absence of
additional factual assertions by Plaintiff regarding the extent or nature of the actual
physical injuries suffered, the Petition does not provide enough."

Applicable jurisprudence from the U.S. Fifth Circuit makes it clear that if a plaintiff
wishes for service of his state court lawsuit to form the basis upon which removal
deadlines, will run, that it is incumbent upon him to affirmatively state this in his Petition
for Damages as the Louisiana Code of Civil Procedure specifies and allows.  This is
something that Mr. Lancaster's petition does not do.

13.

Applicable jurisprudence makes it clear that a Defendant is not required to remove
the case within 30 days of receipt of the suit when the petition fails to "affirmatively reveal
on its face" that Plaintiff is seeking damages in excess of the minimum jurisdictional

amount. Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir.1992) ("the thirty-day time period in which a defendant must remove a case starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court.").  Plaintiff's action may become removable during its first year if Defendant receives "a copy of an amended pleading, motion, order or **other paper** from which it may first be ascertained that" federal jurisdiction exists. 28 U.S.C. § 1446(b)(3).

In the context of "**other paper**," the Fifth Circuit has generally held that a case becomes removable when a "voluntary act" of the plaintiff makes it ascertainable for the first time that the federal jurisdiction exists.  S.W.S. Erectors, Inc., 72 F.3d at 494 (citing Gaitor v. Peninsular & Occidental Steamship Co., 287 F.2d 252, 254 (5th Cir.1961) (non-removable case "cannot be converted into a removable one by evidence of the defendant or by an order of the court ..., but that such conversion can only be accomplished by the voluntary [act of] the plaintiff").

By its plain terms the statute requires that if an 'other paper' is to trigger the thirty-day time period of the second paragraph of § 1446(b), the defendant must receive the 'other paper' only **after** it receives the initial pleading." Chapman, 969 F.2d at 164 (emphasis added).

The instant matter is squarely on point with Williams v. Brand Energy & Infrastructure Services, Inc., CV 16-00120-SDD-EWD, 2016 WL 3977259, at *3 (M.D. La. June 9, 2016), where the Court held:  " Accordingly, the 30-day period for removing the action was not triggered by service of the Petition, but rather by receipt of Williams' response to a Request for Production, indicating his damages "far exceed $75,000." As

defendants removed this action less than 30 days after receiving plaintiff's discovery response, removal was timely under 28 U.S.C. § 1446(b)(3).

14.

In the case brought by Mr. Lancaster, the Defendants had no specific information upon which to assess removability until receipt of the plaintiff's discovery responses received via email on February 19, 2022. Insofar as this removal is being accomplished within 30 days of this date, removal is therefore timely.

WHEREFORE, defendants do hereby remove the above captioned case to the United States District Court for the Eastern District of Louisiana.

Respectfully submitted:

**RABALAIS & HEBERT, LLC**

*s/ Steven B. Rabalais*

**STEVEN B. RABALAIS (#17100) T.A.**
**MELVIN A. EIDEN (#19557)**
**BLAKE T. COUVILLION (#37443)**
701 Robley Drive, Suite 210
Lafayette, LA 70503
Telephone: (337) 981-0309
Fax: (337) 981-0905
Email: srabalais@rhhnet.com
Email: meiden@rhhnet.com
Email: blake@rhhnet.com
**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March15, 2022, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to plaintiff's counsel by operation of the Court's electronic filing system.

Lafayette, Louisiana on this 15th day of March, 2022.

*s/ Steven B. Rabalais*

**STEVEN B. RABALAIS**
**MELVIN A. EIDEN**
**BLAKE T. COUVILLION**